# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# Milwaukee Division

| | |
|---|---|
| MEGAN FOX, an individual, | |
| *Plaintiff,* | |
| | Case No. _____ |
| v. | |
| WAUWATOSA SCHOOL BOARD OF EDUCATION, | **COMPLAINT** |
| *Defendant.* | **[JURY TRIAL DEMANDED]** |

Plaintiff Megan Fox states the following for her Complaint and Request for Declaratory, Injunctive, and Monetary Relief against Defendant Wauwatosa School Board of Education:

## PARTIES

1. Plaintiff Megan Fox is a resident of Ontario County, New York and is a journalist, broadcaster, and author who reports on politics, pop culture, and legal matters whose speech was censored and silenced by the Wauwatosa School Board.

2. Defendant Wauwatosa School Board of Education ("School Board") is the duly elected governing body for Wauwatosa School District in Milwaukee County, Wisconsin. Its actions described in this Complaint are undertaken under color of state law.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over the subject matter of this dispute pursuant to 28 United States Code ("U.S.C.") Section 1331 because it arises under the laws of the United States, and Plaintiff's claims are brought under 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the U.S. Constitution.

4. Venue is proper in this District under 28 U.S.C. § 1391 because all or a substantial amount of the events giving rise to Plaintiff's claims occurred within this District.

5. An actual and justiciable controversy exists between Plaintiff and Defendant.

## FACTS AND BACKGROUND

6. The Wauwatosa School Board of Education is composed of seven (7) elected members: Dr. Eric Jessup-Anger (President), Sharon Muehlfeld (Vice President), Dr. Jenny Hoag (Clerk), Michael Phillips (Treasurer), Michael E. Meier, Leigh Anne Fraley, and Jessica Willis.

7. As published on the School Board's website and in its Bylaws, "[t]he Board has the dual responsibility for implementing statutory requirements pertaining to public education and for meeting the desires of residents."[1]

8. It is a responsibility of the School Board to "[a]dvocate on behalf of students and promote the cause of public education" and to "[c]ommunicate with and keep citizens informed about the progress or any problems of the District."[2]

9. The Board meets twice a month and at other times at the request of the School Board President or the Superintendent.

10. Section 0121 of the School Board's Bylaws ("Bylaws") states that "[t]he supervision of the District shall be conducted by the School Board . . . which is constituted and governed by the laws of the State of Wisconsin."

11. "Members of a Board are elected by citizens to represent them and the State in the governance of the local schools." Bylaws, section 0123.

---

[1] About the Wauwatosa School Board, *Wauwatosa School District,* available at https://www.wauwatosa.k12.wi.us.
[2] *Ibid.*

12. "The Board declares and, thereby, reaffirms its intent to:

    A. Maintain two-way communications with citizens of the District. The Board shall keep them informed of the progress and problems of the School District, and the citizens shall be urged to bring their aspirations and concerns about the District to the attention of this body.

    B. Establish policies and make decisions on the basis of declared educational philosophy and goals.

    C. Act as a truly representative body for citizens in all matters related to programs and operations." Bylaws, section 0123

13. The School Board's bimonthly regularly scheduled meetings provide an opportunity for the public to express its opinions and concerns.

14. The School Board's regularly scheduled meetings are available to the public online via Zoom.

15. The Board's Bylaws state that "[t]he Board values all comments and will respectfully consider this input in decision-making." Bylaws, section 0167.3.

16. The School Board imposes a number of restrictions on public comments.

17. The School Board requires individuals to limit their comment on each item to three (3) minutes. *Id.*

18. The School Board requires that participants must be recognized by the presiding officer and be requested to preface their comments by an announcement of their name and address. *Id.*

19. The School Board requires that statements shall be directed to the presiding officer; no person may address or question School Board members individually. *Id.*

20. The rules permit the presiding officer to interrupt, warn or terminate a participant's statement when "the statement is too lengthy, personally directed, abusive, obscene, or irrelevant." *Id.* at section 0167.3(A).

21. Thus, the presiding officer has the unbridled discretion to restrain speech if an individual refers to a Board member by name, or if the presiding officer thinks that the public comment is "abusive, obscene, or irrelevant."

22. In October, Plaintiff Fox was invited to watch a Wauwatosa School Board meeting.

23. Fox was aware that the meeting was going to be attended by Gays Against Groomer's Founder Jamiee Michelle and members from the advocacy organization Moms for Liberty.

24. The agenda for the Board's meeting on October 24, 2022 included an item to discuss the school district's recently instituted sexual education program for all grades. Many parents and members of the public were opposed to the new program for its graphic and pornographic nature.

25. Most people present at the Board meeting in person and virtually were there to comment on this item. Upon information and belief, most participants were vehemently opposed to and critical of the School Board's decision to implement the new sexual education program.

26. At the meeting in question, the Board began with the public comment portion of the meeting.

27. While there were more than a dozen members of the public present who wanted to speak on the issue, the Board paused public comment on that item after only five (5) people spoke and elected to move on to other items on the agenda.

28. One such public commenter was Jamiee Michelle, founder of the organization Gays Against Groomers, a coalition of individuals who "oppose the recent trend of indoctrinating, sexualizing, and medicalizing children under the guise of 'LGBTQIA+'."[3]

29. When asked to state her name and address, Michelle stated that she did not feel comfortable releasing her address. As a public figure, Michelle is subjected to harassment and threats; requiring her to announce her address is equivalent to requiring her to dox herself in a public forum.

30. Despite her objections, the School Board required her to state her town of residence prior to allowing her to comment.

31. After only a few members of the public were allowed to speak, the Board paused public comment to address other items on the agenda.

32. After nearly two hours, the Board finally returned to public comment. By this time, many people who had planned on expressing their viewpoints on the sexual education program had left the meeting and were unable to voice their opinions.

33. Plaintiff Megan Fox, who attended the meeting in its entirety, spoke during this second round of public comments.

34. During her turn to speak, Fox addressed the Board and criticized its prior treatment of speaker Jamiee Michelle, including pressuring her to dox herself, its restriction on addressing Board members personally, and its general conduct of chilling the public's comments and limiting their criticism by unreasonably delaying public comment until more than two hours into the meeting.

---

[3] https://www.gaysagainstgroomers.com/about

35. Fox, appearing virtually via Zoom, was muted by the Board and cut off well before her allowed three minutes of speaking time had ended.

36. Fox was denied more than 40 seconds of her public comment time by the School Board.

37. Michael Meier, a member of the School Board, commented on the decision, and stated "[t]he Chair has the right to cut off comment if the comment is not aligned with the dignity of the body." However, it was not the Chair of the School Board who interrupted Fox. Fox was muted by Dr. Jenny Hoag, clerk of the School Board, and addressed by Michael Meier.

38. Meier admitted that the decision was a "judgment call", that the "chair has certain discretions", and stated that he felt "something inappropriate was being said".

39. Meier implied that Fox had disrupted the School Board's "orderly process."

40. Fox's conduct was not disorderly. She did not use curse words, raise her voice, nor engage in commentary that could be considered "abusive, obscene, or irrelevant."

41. By contrast, other members of the public who were present at the meeting were allowed to use curse words during their time to speak.

42. No other public commenter was prevented from speaking nor was given less than three minutes to present their viewpoints.

43. The School Board was merely offended by Fox's speech, which criticized and questioned the legality of their actions, and therefore decided to terminate Fox's right to speech and infringe on her First Amendment rights.

44. Even if Plaintiff was uncivil, which she was not, the School Board cannot impose the content of speech at a public meeting in the name of civility.

45. The First Amendment of the United States Constitution does not grant the American public the right to free speech, it guarantees it. An infringement of that right is a grievous offense and is bound by the strictest limits.

46. A school board, as a citizen-elected group tasked with making important decisions regarding educational curricula and policies, is designed to be the intermediary between the public and the school. The public participation component of school board meetings is critical to meaningful exchange and the receipt of feedback from the very public that the school board is elected to represent.

47. The Wauwatosa School Board does not have the authority to silence critics, chill speech, and impede objections. Despite this, Defendant has implemented unconstitutional limitations on speech and abused their power to muzzle public discourse.

48. Plaintiff, whose own right to free speech was offended, now seeks remedy on behalf of herself and others from Defendant's unconstitutional policies and practices.

**FIRST CAUSE OF ACTION**
**Facial Challenge to Violation of First Amendment Right to Free Speech**
**U.S. Const. Amends. I, XIV; 42 U.S.C. § 1983**

49. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

50. The First Amendment to the United States Constitution states: "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Am. I.

51. 42 U.S.C. § 1983 gives citizens the right to bring a cause of action against a government entity for the deprivation of their rights under the U.S. Constitution.

7
Case 2:23-cv-00437-JPS   Filed 04/04/23   Page 7 of 14   Document 1

52. The First Amendment's protections extend to public speech at Defendant's school board meetings by operation of the Fourteenth Amendment.

53. The First Amendment protections for free speech apply to speaking at public school board meetings as a school board meeting is a limited public forum.

54. "A limited public forum, as opposed to a traditional public forum such as a street or a park, refers to a forum that the government intentionally opens for public discourse. Even though the government does not have to open a limited public forum in the first place, once it does so any restrictions on speech within the forum must be reasonable in light of the forum's purpose and may not constitute viewpoint discrimination." *Pichelmann v. Madsen*, 31 F. App'x 322, 327 (7th Cir. 2002) (citations omitted).

55. Defendant has created a limited public forum by opening its regular meetings for public comment, and thus is prohibited from discriminating against or limiting speech on the basis of viewpoint.

56. The Board "cannot exclude speakers from the public-comment portion of its Board meetings simply because they intend to express viewpoints with which the District disagrees." *Anderson v. Hansen*, 519 F. Supp. 3d 457, 465 (E.D. Wis. 2021).

57. Criticism of school officials, school employees, school rules and regulations, school budgets, and school curricula are essential to the business of school boards - regardless of whether school board members want to hear such criticism. The First Amendment prohibits the exclusion and censorship of these viewpoints from public comment at school board meetings.

58. Plaintiff is a member of the public who wishes to attend public School Board meetings and petition that Board with grievances. She is not precluded from doing so by the School Board's Bylaws or policies.

59. Plaintiff's speech is protected under the First Amendment of the United States Constitution because it addresses matters of great public concern in a limited public forum.

60. The School Board has violated Plaintiff's right of free expression by imposing facially-unconstitutional restrictions on the speech of Plaintiff and others.

61. The School Board's policies (1) prohibiting personally addressing by name or questioning individual school board members, and (2) allowing the censorship of speech deemed "lengthy," "personally directed," "abusive," "obscene," and "irrelevant," violate the First Amendment right of free speech on their face by impermissibly discriminating against speech on the basis of content and viewpoint.

62. These restrictions are designed to suppress ideologies and opinions respecting matters before the School Board with which Defendant disagrees.

63. The School Board and its Chair are given unbridled discretion to define and apply these vague and undefined terms.

64. These restrictions violate the First Amendment right of free speech on their face because they are not reasonable limitations that advance the meeting's purpose, which is to facilitate communication with and listen to remarks from the public, but rather serve only to suppress and chill disfavored commentary.

65. The School Board has imposed content-based restrictions on speech that are not the least restrictive means of achieving a compelling government interest.

66. These restrictions, as written, violate the First Amendment by discriminating on viewpoint.

67. These prohibitions are also substantially overbroad in violation of the First Amendment.

68. By enforcing these provisions, Defendant, under color of law, deprives Plaintiff and other public commenters of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

69. Plaintiff seeks an order enjoining the School Board from continuing to enforce its unconstitutionally vague, overbroad, and content-based rules.

## SECOND CAUSE OF ACTION
**As-Applied Challenge to Violation of First Amendment Right to Free Speech**
**U.S. Const. Amends. I, XIV; 42 U.S.C. § 1983**

70. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

71. Plaintiff Fox's public speech at the School Boards meeting that Defendant has censored is fully protected by the First Amendment right to free speech.

72. This speech was germane to the School Board's business and agenda.

73. The restrictions on "personally directed" "abusive" "obscene" or "irrelevant" speech allow the prohibition of speech because it opposes, or offends, the Board or members of the public, in violation of the First Amendment.

74. To restrain Plaintiff's criticisms, the Board unconstitutionally applied these restrictions to silence Fox and restrict her speech.

75. The Wauwatosa School Board had opened its meeting to public comments, and thus created a designated public forum from which Plaintiff was excluded.

76. The Board engaged in impermissible viewpoint discrimination in violation of the First Amendment.

77. Plaintiff Fox was interrupted several times, prohibited from speaking for her full term of three (3) minutes.

78. The School Board damaged Plaintiff, acted maliciously, and intended to punish Plaintiff for criticizing its conduct.

79. Defendant did not terminate or censor Plaintiff Fox's speech on the basis of time, obscenity, or lack of decorum. Rather, they censored her speech because they disagreed with it.

80. "The right to criticize public officials is . . . protected by the *First Amendment*." *Jefferson v. Ambroz*, 90 F.3d 1291, 1298 (7th Cir. 1996).

81. As applied against Plaintiff Fox, Defendant's restrictions on speech Plaintiff's First Amendment right of free speech by impermissibly discriminating against her speech on the basis of its content and viewpoint.

82. In violating Plaintiff's First Amendment rights, the Defendant and its members have acted in a manner that was reckless, callous, intentional, or malicious. The School Board's members have singled out Plaintiff for her views and censored her in a manner that evinces a complete disregard for Plaintiff's well-established First Amendment rights.

83. By enforcing these provisions, Defendant has, under color of law, deprived Plaintiff of her right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiff is thus damaged in violation of 42 U.S.C. § 1983.

84. Plaintiff is entitled to compensatory damages, attorney fees, litigation costs, and all expenses associated with this Action pursuant to 42 U.S.C. § 1988.

## THIRD CAUSE OF ACTION
**Violation of First Amendment Right to Freedom of Speech**
**U.S. Const. Amends. I, XIV, 42 U.S.C. § 1983**
**Facial Challenge to Address Disclosure**

85. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

86. The right to free speech also encompasses the right to refrain from speaking.

87. Section 0167.3 of the School Board's Bylaws, the address announcement provision, is facially invalid because it has a chilling effect on protected speech.

88. The School Board's requirement that speakers participating the public comment period preface their comments by announcing their home address only appears content-neutral.

89. In practice, enforcement of this requirement is designed to intimidate public commenters who would express controversial views.

90. Even if the address announcement requirement is content-neutral, it is not properly tailored to advancing any government interest.

91. Being potentially forced to state their home address when speaking out on controversial issues inhibits the desire to continue speaking out for fear of reprisal and retaliation by those who do not tolerate their points of view.

92. Public commenter Jaimee Michelle was interrupted at the beginning of her public comment time and told to state her home address.

93. Michelle clearly expressed that she felt uncomfortable sharing her address.

94. As a public figure and the founder of a high-profile organization that garners a lot of attention, releasing her address would cause serious harm to Mitchell. Yet she was forced to state her town of residence before proceeding with her commentary.

95. Furthermore, Plaintiff Fox, who refused to announce her address prior to her remarks on the grounds that the School Board had no right to make such a request, had her speech terminated and censored as previously illustrated.

96. Defendant does not have a requirement that individuals who participate in public comment must be residents of Wauwatosa or Milwaukee County. Any member of the public may participate in public comment, regardless of their residence.

97. By enforcing this provision, Defendants, under color of law, deprive Plaintiff and other public commenters of their right of free speech in violation of the First and Fourteenth Amendments to the United States Constitution.

98. Plaintiff seeks an order enjoining the School Board from continuing to enforce its unconstitutional address announcement provision.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for the following relief:

a) A declaration that the School Board's actions constitute a violation of Plaintiff's First and Fourteenth Amendment rights;

b) A declaration that the School Board's address announcement provision and restrictions on speech made during public comment are unconstitutional;

c) Injunctive relief precluding the School Board from restraining Plaintiff's speech;

d) Injunctive relief enjoining the School Board from restraining speech based upon its overbroad, vague, and content-based rules;

e) Compensatory damages;

f) An award of reasonable attorney fees;

g) Litigation costs and expenses; and

h) A grant of any such further actual damages or equitable relief as the Court deems necessary and proper in the public interest.

Dated: April 4, 2023

                                        Respectfully submitted,

                                        */s/ Robert E. Barnes*

                                        Robert E. Barnes, Esq.
                                        CA Bar No. 235010
                                        Lexis Anderson, Esq.
                                        *Subject to admission pro hac vice*
                                        TX Bar No. 24127016
                                        BARNES LAW
                                        700 South Flower Street, Suite 1000
                                        Los Angeles, California 90017
                                        Telephone: (310) 510-6211
                                        Facsimile: (310) 510-6225
                                        Email: robertbarnes@barneslawllp.com
                                        Email: lexisanderson@barneslawllp.com

                                        Counsel for Plaintiff MEGAN FOX